**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CLYDE BROUGHTON, JR.,

        Plaintiff,

vs.                                   Case No. 3:06-cv-234-J-32MCR

CITY OF JACKSONVILLE,

        Defendant.

## **ORDER**[1]

This case is before the Court on defendant City of Jacksonville's Motion for Summary Judgment (Doc. 39) to which plaintiff Clyde Broughton, Jr., filed a response in opposition (Doc. 43). The parties filed numerous exhibits in support of their respective positions (see attachments to Docs. 39, 43) and Broughton moved to strike or exclude *in limine* some of the City's evidence. See Docs. 46, 47, 48, 49.[2] The Court vacated the final pretrial and trial settings upon being advised that the parties had reached a settlement, one of the terms of which called for the Court's ruling on summary judgment. See Docs. 38, 45.

**Background Summary**

The undisputed facts reveal that Broughton worked for the City from approximately 1998 until his termination in November 2004. While Broughton was originally retained as a temporary employee, he later tested for and was promoted to the civil service position of

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

[2] Upon consideration, the motions to strike or exclude *in limine* are denied.

program aide, a position which primarily involved driving a passenger van or bus to transport Duval County senior citizens to and from various community activity centers.  In 2002 Broughton began experiencing health problems, including fatigue, and was later diagnosed with diabetes.  He requested and received a leave of absence from his position to address his health complications.  For a short time after Broughton returned to work, he assumed the duties of an assistant to the transportation coordinator, which involved answering telephone calls, routing van service, and filing.  After a few weeks, Broughton was returned to his program aide position.

In August 2003, Broughton was directed to visit the City's medical review officer, Dr. Terry Kuhlwein, to obtain a fitness for duty examination.  There is a dispute in the record as to whether Broughton's supervisors ordered the visit because of alleged reports that two seniors complained that Broughton had fallen asleep at the wheel while driving the bus and/or because Broughton's frequent restroom stops were causing route delays for the seniors Broughton transported. Upon evaluating Broughton on August 8, 2003, Dr. Kuhlwein found him to be physically unfit for duty as a driver, stating that Broughton would need to address five criteria before resuming such a position, including significantly lowering his blood sugar without insulin, securing medical clearance from an ophthalmologist, a urologist, and a cardiologist, and obtaining appropriate lab evaluations.  Dr. Kuhlwein stated that Broughton's health put him at increased risk for collapse and various other serious complications and that, if Broughton's blood sugar were any higher at the time he presented for his exam, Dr. Kuhlwein likely would have recommended that Broughton immediately report to a hospital emergency room.

Broughton disagreed with Dr. Kuhlwein's assessment of the severity of his condition but took a leave of absence from his employment to address his medical issues. Broughton states that he repeatedly told supervisors he wanted to be temporarily reassigned to a non-driving position. However, Broughton remained on leave and did not receive any follow-up medical treatment until January 2004 when he sought care from Dr. Olga Petrucelli, his primary care physician, who arranged appointments for Broughton to visit the various specialists as directed by Dr. Kuhlwein. Broughton did not always keep the appointments Dr. Petrucelli made for him and on April 12, 2004, the City sent Broughton a letter advising him that his FMLA leave was exhausted but that he could be considered for further leave extensions by completing various enclosed forms. Broughton responded on April 29, 2004 by completing a form requesting that he be accommodated by assignment to shorter routes or to an administrative position. The City apparently did not respond to this request and on May 15, 2004, Broughton filed an EEOC charge, claiming that the City had discriminated against him on the basis of his age and disability when it failed to reassign him to a driver position with shorter routes or to an administrative position that did not involve driving, as Broughton claimed the City had done for two younger drivers requesting reassignment.

On May 19, 2004 the City sent Broughton a letter to determine whether he intended to return to his previous position. The letter did not acknowledge Broughton's April 29, 2004 written accommodation request; instead, it stated that if Broughton did not secure the necessary medical clearance to return to his position by June 7, 2004, the City would deem that he had resigned. At the time, Broughton still had not secured the necessary clearances Dr. Kuhlwein felt necessary to resume his position as a program aide. In response to the

3

May 19, 2004 letter, Broughton asked for and received an extension until June 29, 2004 to visit the various medical providers.  On June 30, 2004 Dr. Petrocelli wrote to the City that Broughton's diabetes was under control.  In a July 21, 2004 letter to Broughton, a City supervisor acknowledged that Dr. Petrocelli had written to the City, but stated that Dr. Petrocelli's letter did not address the other criteria cited by Dr. Kuhlwein as requiring assessment.  The City's July 21, 2004 letter explained to Broughton that "in order to return to work" Broughton would need to submit medical evaluations assessing all five of the criteria noted in Dr. Kuhlwein's original "not fit for duty" evaluation.  Importantly, this letter did not establish any deadline for Broughton to secure these evaluations and did not make reference to the earlier June 29, 2004 deadline.  Between August and November 2004, Broughton received an eye exam and visited with urology and cardiology specialists who, along with Dr. Petrocelli, sent letters to the City stating that Broughton's health in those areas did not present a basis to keep him from his work duties.  On November 3, 2004, the City sent Broughton a letter of termination, citing his failure to return to work after a leave of over a year.

On December 14, 2005, the EEOC issued Broughton a Notice of Right to Sue and he timely filed a *pro se* complaint in this Court.  Broughton later obtained counsel and filed an amended complaint alleging that the City discriminated against him on the basis of age and disability when the City failed to reasonably accommodate his disability and then terminated him.[3]  The City now moves for summary judgment contending that any claim based on

---

[3]Plaintiff's current counsel is a successor to the attorney who filed the amended complaint.

termination is barred by Broughton's failure to amend his EEOC charge (originally filed in May 2004) to include a charge of unlawful termination.  The City further claims Broughton cannot prove a prima facie case of discrimination based on disability because he cannot prove he is disabled within the meaning of the ADA.[4]  Finally, as to Broughton's age discrimination claim, the City claims Broughton cannot meet several elements of his prima facie case.[5]

**Legal Analysis**

Notwithstanding the odd procedural posture of this case brought on by the parties' mediated agreement, the Court still applies the summary judgment standard of Rule 56, Federal Rules of Civil Procedure.  Accordingly, the City's motion can only be granted if it can show that the undisputed material facts support the entry of judgment in its favor as a matter of law.  Fed.R.Civ.P. Rule 56.

### Administrative Exhaustion of Termination Claims

First, as to the City's argument that Broughton's termination claims are barred because he failed to amend his pro se May 2004 EEOC charge to include claims related to his November 3, 2004 termination, the Court disagrees and holds as a matter of law that the

---

[4] Though Broughton's disability discrimination claim arises under both the Americans with Disabilities Act as well as the Florida Civil Rights Act, disability under the FCRA is analyzed using the ADA framework.  See Chanda v. Engelhard/ICC, 234 F.3d 1219, 1221 (11th Cir. 2000).

[5] Plaintiff's age discrimination claim is brought under the Age Discrimination in Employment Act of 1967 and the Florida Civil Rights Act of 1992, both of which essentially apply the McDonnell Douglas burden-shifting analysis used under Title VII for cases based on circumstantial evidence.  See Walker v. NationsBank of Florida, N.A., 53 F.3d 1548, 1556 (11th Cir. 1995); Morrow v. Duval County Sch. Bd., 514 So.2d 1086, 1087-88 (Fla. 1987).

scope of the EEOC charge included Broughton's eventual termination, as evidenced by the City's responses to the EEOC investigation. See Doc. 43, Ex. 2, Att. A.  See Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1280 (11th Cir. 2004) (describing liberal construction afforded to scope of EEOC charge, especially when filed pro se, and stating that proper inquiry is whether the judicial complaint is "like or related to, or grew out of, the allegations contained in [the] EEOC charge").

### Disability Discrimination Claim (Count I)

As to Broughton's disability discrimination claim, the City argues that Broughton cannot establish that he is disabled, defined by the ADA as being substantially limited in a major life activity by an impairment, having a record as such, or being perceived as such. 42 U.S.C. § 12102(2).  Specifically, the City contends that Broughton's inability to drive because of his diabetes does not so limit the major life activity of "work" as to meet the ADA disability definition.  While true that the inability to perform a single task or job does not mean one cannot work for purposes of the ADA, Sutton v. United Air Lines, Inc., 527 U.S. 471, 491-92 (1999), here Dr. Kulwein found (although Broughton disagreed with him) that Broughton could not drive any passengers at all because of his diabetes, thus potentially disqualifying him from a broad class of positions for which he had been trained and in which he had been working for the City for many years. Additionally, Dr. Kulwein, the City's medical doctor, stated that he would be unlikely to find Broughton able to drive a passenger bus if he could not significantly lower his blood sugar level without the use of insulin, in accordance with federal commercial driving regulations. See Doc. 39, Ex. 10 (Dr. Kuhlwein depo.) at 38-40. Yet Broughton's physician, Dr. Petrocelli, stated that Broughton would

never be able to control his diabetes without the use of insulin.  The Court therefore questions the City's argument that its effort to hold open the program aide position is a sign that it did not regard Broughton as disabled- - the reality is that its own doctor was unlikely to ever have found Broughton to be able to return to that position (and there is of course a dispute now in the medical evidence as to whether he could or not).

Broughton contends that the City's failure to respond to his requests for accommodation or to discuss the need for him to perform a skills inventory to determine what other positions he might be able to perform is additional evidence that the City regarded him as disabled from performing any kind of work.  Though some of the City's supervisory personnel disagree with Broughton as to the adequacy of the steps that were taken, there are material disputes in the evidence as to what efforts the City made to accommodate Broughton in response to his requests and whether any insufficiency of those efforts is further evidence that the City regarded Broughton as disabled.  The same is true as to Broughton's contention that the City terminated him without warning because it became convinced he could not work.  Broughton has therefore created a disputed issue of fact in the record as to whether the City regarded Broughton as disabled.  Similarly, the dispute in the record regarding whether Broughton could drive a passenger bus at all while on insulin precludes decision at this stage as to whether his accommodation request for shorter routes was reasonable. As the City's motion did not focus on whether Broughton would be able to establish the other elements of a prima facie case of disability discrimination (though Broughton's response to the motion points to evidence he says does support those elements), the Court need not consider those elements in deciding that summary judgment

on the disability claim is due to be denied.

### Age Discrimination Claim (Count II)

As to Broughton's age discrimination claim, the City contends Broughton cannot demonstrate through circumstantial evidence a prima facie case of age discrimination.[6] To establish such a case, an employee must show (1) he was a member of the protected age group; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) the company accommodated an individual outside the plaintiff's protected class.  See Kelliher v. Veneman, 313 F.3d 1270 (11th Cir. 2002).

The City claims Broughton cannot meet his burden to go forward because he never sought any position and therefore cannot establish that he was qualified for any particular position and he cannot show that a younger individual was accommodated.  However, Broughton's point is that he was qualified to work at an accommodated position or to at least remain employed in some capacity, accommodations afforded to younger individuals.  As noted above in the discussion regarding Broughton's disability discrimination claim, there is a dispute in the record as to whether the City accorded Broughton appropriate accommodations.  Broughton has demonstrated that younger employees were afforded accommodations of either temporary positions, alternate positions, or thorough job search efforts.  Thus, if Broughton were able prove that he was denied similar accommodations (which, on this disputed record, a jury would have to decide), the record contains evidence which would support the other elements of his prima facie case, thus establishing a

---

[6]The City argues, without dispute from Broughton, that his age discrimination claim does not rely on direct evidence.

presumption of discrimination.  As the City did not address whether it could meet its burden to show a legitimate, non-discriminatory reason for its adverse employment action, Broughton was not required to show evidence of pretext to defeat this motion.  The Court therefore holds only that the issues raised by the City as to this claim do not merit entry of summary judgment.

Accordingly, it is hereby

**ORDERED**:

Defendant City of Jacksonville's Motion for Summary Judgment (Doc. 39) is **DENIED**. Based on the Mediator's Report (Doc. 38), the Court assumes the parties intend to file further documents to bring this case to a conclusion.  The Clerk should close the file now and the parties will have until **August 15, 2008** to file appropriate settlement documents.

**DONE AND ORDERED** at Jacksonville, Florida this 9th day of July, 2008.

*[signature]*
**TIMOTHY J. CORRIGAN**
United States District Judge

s.
Copies:

counsel of record

Terrance E. Schmidt, Esq. (Mediator)